**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ROSA RENETIA VAUGHN and DELVON
MORGAN, JR.,

        Plaintiffs,

   v.

OFFICER C. BONAVENTURE, OFFICER
D. KACALEK, SGT. J. CHU, OFFICER J.
LUNA,

        Defendants.

_____/

No. C 12-005793 RS

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT**

## I.   INTRODUCTION

Rosa Renetia Vaughn and her son, Delvon Morgan, Jr., proceeding in pro se, brought this

suit against four officers of the Berkeley police department for alleged misconduct during the

execution of a search warrant on Vaughn's apartment on November 16, 2011, and the subsequent

arrest of Morgan.  The officers filed a motion for summary judgment, to which plaintiffs have not

responded.  The motion was determined to be appropriate for disposition without oral argument

according to Civil Local Rule 7-1(b).  Plaintiffs' time to respond having expired, and good cause

appearing, defendants' motion is hereby granted for the reasons set forth below.

## II.   BACKGROUND

**United States District Court**
For the Northern District of California

1    On November 16, 2011, Sergeant Jeffrey Chu obtained a warrant to search Rosa Renetia

2  Vaughn's residence at 3320 Martin Luther King, Jr. Way in Oakland based on probable cause that

3  her son, Delvon Morgan, Jr., resided at the residence and had been involved in two armed robberies,

4  for which the investigation was ongoing.  Plaintiffs do not challenge the issuance of the search

5  warrant.

6    Officers Darren Kacalek, Christopher Bonaventure, and Jeffrey Luna participated in serving

7  the search warrant with Sergeant Chu.  When the officers entered the apartment, they had their

8  handguns unholstered and in a "low ready" position.  Vaughn was home alone with her baby.  Once

9  inside the apartment, Officer Bonaventure and Officer Kacalek found cocaine packaged for sale and

10  a loaded handgun in the upper northwest bedroom, as well as several pieces of Vaughn's

11  identification in that same room, all of which were seized by the officers.  Vaughn was then arrested

12  and handcuffed.  In a separate bedroom, Sergeant Chu located and seized stolen property as well as

13  Morgan's Social Security card.  Morgan was later convicted of robbery.

14    In the complaint, Vaughn states she was "not aware of the drugs or a gun in my bedroom,"

15  noting that she had hosted a social gathering two nights before the officers searched her home.  In

16  her deposition, she again stated she does not know how the narcotics and the gun came to be in her

17  bedroom, but she suggested they belonged to a male friend named Darnell or were otherwise left

18  there after a party.  Vaughn nevertheless pled guilty or no contest to possession of narcotics.

19    Morgan was not present during the search, and Officers Kacalek, Bonaventure, and Luna

20  deny ever coming into contact with him.  Sergeant Chu met Morgan at the police station after he

21  was in police custody and in the presence of a third party officer the day before the search warrant

22  was served.  Chu denies using force against Morgan or threatening or coercing him in any manner,

23  and states he did not see anyone else do so.  Vaughn admits that although she claims the unnamed

24  officer that arrested Morgan struck him, she does not claim that any of the four officers named in

25  this lawsuit did so.

26    Vaughn states in the complaint that she is suing for "defamation of character," a state law

27  claim.  She further alleges it was improper for the officers to have seized her identification cards and

28

CASE NO. C 12-05793 RS
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

2

1   cell phone and that the officers improperly had their weapons drawn at the time they entered the

2   apartment.  Finally, plaintiffs allege the officers used excessive force in the arrest of Morgan.

3                                           III. LEGAL STANDARD

4           Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to

5   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc.

6   56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of

7   material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. Proc.

8   56(c)(1)(A).  If the movant succeeds, the burden then shifts to the nonmoving party to "set forth

9   specific facts showing that there is a genuine issue for trial."  *Id.* at 322 n.3; *see also* Fed. R. Civ.

10  Proc. 56(c)(1)(B).  A genuine issue of material fact is one that could reasonably be resolved in favor

11  of the nonmoving party, and which could "affect the outcome of the suit."  *Anderson v. Liberty*

12  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must view the evidence in the light most

13  favorable to the nonmoving party and draw all justifiable inferences in its favor.  *See id.* at 255.

14                                           IV. DISCUSSION

15  A.  State Tort Claims

16          The California Tort Claims Act provides that public entities and employees are liable in tort

17  only to the extent provided by statute.  Cal. Gov't Code § 815.  Government Code § 905 requires the

18  presentation of "all claims for money or damages against local public entities" before suit is filed,

19  subject to exceptions not relevant here.  *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 737,

20  (2007).  Failure to file a pre-lawsuit claim is fatal to a state law claim for damages against covered

21  entities.  *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004) (failure to allege

22  compliance with the Tort Claims Act pre-lawsuit claim requirement is fatal to a state law claim for

23  damages).

24          The complaint does not allege that plaintiffs submitted any claim to the city before filing this

25  lawsuit, and Vaughn admitted in her deposition that she did not do so.  Accordingly, plaintiffs' state

26  law claim for defamation is barred.  Even if plaintiffs had filed a pre-suit claim, a defamation action

27  arising out of a criminal investigation is barred by statutory immunity, even when the officer

28

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1   allegedly acts with malice. *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1212–13

2   (1994); Cal. Gov. Code § 821.6.

3   B.  Federal Claims

4          Although plaintiffs do not specify the source of their federal claims, the complaint is fairly

5   read to suggest a claim under 42 U.S.C. § 1983.  Plaintiffs generally allege violation of their Fourth

6   Amendment rights based on allegations that the officers improperly seized certain items from

7   Vaughn's residence, used excessive force in executing the search warrant, and used excessive force

8   in arresting Morgan.

9          Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or

10  immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp.*

11  *Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of

12  substantive rights, but provides a method for vindicating federal rights elsewhere conferred. *See*

13  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  To state a claim under § 1983, a plaintiff must

14  allege two essential elements: (1) that a right secured by the Constitution or laws of the United

15  States was violated and (2) that the alleged violation was committed by a person acting under the

16  color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda County*, 811

17  F.2d 1243, 1245 (9th Cir. 1987).  In this case, defendants do not contest they were acting under the

18  color of state law, but rather that plaintiff has not established a violation of federal law.

19              1.  *Seizure of ID Card and Cell Phone*

20         Vaughn alleges her "human rights" were violated by the seizure of her identification cards

21  and cell phone.  Even if this claim were characterized as an unreasonable seizure claim under the

22  Fourth Amendment, it fails for lack of supporting evidence.

23         It is undisputed the officers found in Vaughn's home cocaine packaged for sale, packaging

24  materials, a loaded gun, a safe with five $100 bills, and no paraphernalia indicating personal use of

25  the narcotics.  These items, which together constitute evidence of narcotics sales, were all found in

26  the northwest bedroom where Vaughn was first encountered and in which her identification cards

27  and cell phone were found.  The presence of her cards and phone provided evidence she controlled

28

United States District Court

For the Northern District of California

1   and occupied that room and the items in it.  As such, the officers had probable cause to seize those

2   items as evidence of the element of control needed to prove personal possession of the contraband.

3        The officers were also entitled to seize Vaughn's cell phone under the undisputed facts in

4   this case.  The evidence recovered by the officers suggests Vaughn was party to a narcotics sales

5   crime.  Therefore, the officers had probable cause to seize her cell phone based on a reasonable

6   belief it contained evidence of narcotics dealing.  *See United States v. Santillan*, 571 F.Supp.2d

7   1093, 1100–01 (D. Ariz. 2008) ("There is authority for the proposition that cell phones and pagers

8   in drug-trafficking investigations may come within the plain view exception to the warrant

9   requirement as items akin to contraband, in that they are often tools of the drug-trafficking trade.").

10  The complaint does not challenge any subsequent search of the phone's contents.  *Cf. People v.*

11  *Diaz*, 51 Cal.4th 84 (2011) (holding warrantless seizure and search of a cell phone pursuant to arrest

12  for narcotics offense to be lawful); *People v. Riley*, D059840, 2013 WL 475242 (Cal. Ct. App. Feb.

13  8, 2013), cert. granted in part on the question of the search, 134 S. Ct. 999 (2014).  Even if Ms.

14  Vaughn could state an unreasonable seizure claim as to her cell phone, qualified immunity (the

15  standard for which is discussed below) would apply because an officer could reasonably believe it

16  was lawful to seize the cell phone for the two reasons explained above, namely (1) the cell phone is

17  evidence that Vaughn controlled and occupied the bedroom where the narcotics, packaging material,

18  gun, and money were found, and (2) the cell phone was subject to seizure as evidence of narcotics

19  trade.

20        2.  *Weapons Display*

21        Vaughn further alleges the officers were "pulling guns on me" when they entered her home

22  to execute the search warrant.  Construing Vaughn's allegations to raise a claim of excessive force,

23  "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and

24  circumstances confronting them, without regard to their underlying intent or motivation." *Graham*,

25  490 U.S. at 397.  In order to determine the reasonableness of a search or seizure, *Graham* requires

26  careful attention to the facts and circumstances of each case, including the severity of the crime at

27  issue and, where applicable, whether the suspect poses an immediate threat to the safety of the

28  officers or others. *See id.*, at 396.

**United States District Court**
For the Northern District of California

1    Both the Supreme Court and the Ninth Circuit have concluded that officers may be entitled

2 to unholster or display their weapons when serving a warrant when necessary to ensure officer

3 safety.  For example, the Supreme Court found no violation of the Fourth Amendment where

4 officers serving a search warrant involving identity theft and fraud, which are non-violent crimes,

5 first ordered the person answering the door to "lie face down on the ground" and then "entered their

6 bedroom with guns drawn and ordered them to get out of their bed and to show their hands." *Los*

7 *Angeles County, California v. Rettele*, 550 U.S. 609, 610–11 and 616 (2007).  Because the court in

8 *Rettele* found no violation, it did not go on to address qualified immunity. *Id.* at 616.  In *Jama v.*

9 *City of Seattle*, 446 Fed. Appx 865, 867 (9th Cir. 2011), the Ninth Circuit observed that some types

10 of investigations may present particular risks to officers in the course of executing a search warrant.

11 Considering a team of officers executing a warrant to search for narcotics, the court found it

12 reasonable for the officers to point their weapons during the initial search as "'[t]he risk of harm to

13 both the police and the occupants is minimized if the officers routinely exercise unquestioned

14 command of the situation.'" *Id.* (quoting *Michigan v. Summers*, 452 U.S. 692, 702–03 (1981)).

15    According to Sergeant Chu, when the officers entered the apartment, they had their

16 handguns unholstered and in a low ready position because they were investigating a series of armed

17 robberies.  According to Chu, the nature of the crime suggested weapons might be present as well as

18 persons willing to use them, and the officers were at a tactical disadvantage until the scene was

19 secured.  Based on the uncontested evidence submitted in support of this motion, the officers'

20 actions here appear to be objectively reasonable.

21 C.  Qualified Immunity

22    Qualified immunity shields a police officer from liability "if a reasonable officer could have

23 believed" the conduct was lawful. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  The rule applies

24 whether an officer makes a reasonable "mistake of law, a mistake of fact, or a mistake based on

25 mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations

26 omitted).  "An officer conducting a search is entitled to qualified immunity where clearly

27 established law does not show that the search violated the Fourth Amendment." *Id.*, at 234–44.  As

28 explained above, plaintiffs have failed to present evidence to substantiate their claims of improper

CASE NO. C 12-05793 RS
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1  seizure and excessive force by the officers in executing the search warrant at Vaughn's residence.

2  To the extent plaintiff claims the officers exercised excessive force by brandishing their weapons

3  upon entry to her residence, the officers would be entitled to qualified immunity for the reasons

4  stated above.

5  D.  Excessive Force Claim by Morgan

6       Vaughn admitted in her deposition that although she is claiming the officer that arrested

7  Morgan struck him, she is not claiming that any of the four officers named in this lawsuit struck

8  him.  Neither does the complaint challenge the seizure of any of Morgan's property.  Accordingly,

9  there is no evidence to support a claim for excessive force, or any other federal claim, by Morgan.

10  V.  CONCLUSION

11       For the reasons stated above, defendants are entitled to summary judgment on plaintiffs'

12  state and federal claims.  The case is hereby dismissed.

13

14       IT IS SO ORDERED.

15

16  Dated:  May 8, 2014

     RICHARD SEEBORG

17       UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

CASE NO. C 12-05793 RS
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT